**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dominik Stone, | No. CV-24-03047-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Charles Schwab & Company Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Charles Schwab & Co., Inc.'s Partial Motion to Dismiss, (Doc. 28), Plaintiff Dominik Stone's, who is proceeding *pro se*, Second Amended Complaint ("SAC") (Doc. 26). Having reviewed the briefing and the relevant case law, the Court **grants in part and denies in part** Defendant's Motion.

**I.  BACKGROUND**

Plaintiff began working as a full-time employee for Defendant in December 2018. (Doc. 26 at 2.) Defendant laid Plaintiff off in October 2023. (*Id.* at 8.) During this tenure, Plaintiff alleges Defendant subjected Plaintiff to discrimination, retaliation, and hostility before wrongfully terminating Plaintiff. (*Id.* at 2–8.) Based on these allegations, Plaintiff's SAC asserts ten claims against Defendant. Defendant moves to partially dismiss these claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. 28.)

**II.  LEGAL STANDARD**

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice

of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III. DISCUSSION

Plaintiff's SAC asserts the following counts against Defendant: (1) sex discrimination and retaliation; (2) failure to accommodate disability; (3) hostile work environment; (4) failure to promote and pay discrimination; (5) wrongful termination; (6) breach of good faith and fair dealing; (7) fraudulent misrepresentation; (8) defamation; (9) failure to prevent discrimination and retaliation; and (10) intentional and negligent infliction of emotional distress.[1] (Doc. 26 at 11–13.) Defendant moves to dismiss counts two, four, five, six, seven, and eight of Plaintiff's SAC pursuant to Rule 12(b)(6). (Doc. 28.) The Court grants Defendant's motion as to all counts except for Plaintiff's claim for retaliatory discharge (count five). The remaining counts fail to state a claim for relief.

### A. Failure to Accommodate Disability—Count Two

Plaintiff alleges Defendant violated the Americans with Disabilities Act ("ADA") and the Arizona Civil Rights Act ("ACRA"). (Doc. 26 at 12.) The two claims are based on the same allegations. Plaintiff states Defendant violated these two statutes in a job performance review conducted in 2019. (*Id.* at 3.) In that review, Plaintiff asserts a senior manager noted that Plaintiff's prior hysterectomy "had a negative impact on Plaintiff's availability." (*Id.*) Although Plaintiff was rated as "Meets Expectations," Plaintiff contends the rating was unfair because "Plaintiff maintained a high level of performance" and had "exceptional work" "before and after the surgery." (*Id.*) Additionally, Plaintiff alleges that 2019 was the only year Plaintiff did not receive a merit-based salary increase. (*Id.*) The Court finds that Plaintiff's ADA and ACRA claims are untimely and dismisses them with prejudice.

1. *The ADA*

Before filing an ADA claim, a plaintiff must timely file a discrimination charge with the Equal Employment Opportunity Commission (the "EEOC"). *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 823 n.12 (9th Cir. 2001). For an EEOC charge to be timely, it must be filed within 180 days of the alleged violation, unless the complainant initially

---

[1] The parties jointly stipulated to dismissing counts nine and ten without prejudice. (Doc. 29.)

institutes proceedings with a state or local agency, in which case the EEOC charge must be filed within 300 days of the violation. 42 U.S.C. § 2000e-5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Here, Plaintiff filed a charge of discrimination with the Arizona Civil Rights Division and the EEOC on March 25, 2024. Therefore, Plaintiff is time-barred from asserting a claim under the ADA for any discriminatory behavior occurring before May 30, 2023 (300 days prior to Plaintiff filing a charge with the EEOC). *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 114 ("[O]nly incidents that took place within the timely filing period are actionable.") Plaintiff contends the discriminatory conduct occurred in 2019. (Doc. 26 at 2–3.) Accordingly, the Court dismisses with prejudice Plaintiff's ADA claim based on Defendant's 2019 behavior because Plaintiff failed to timely exhaust Plaintiff's administrative remedies with the EEOC.[2] *SeeNat'l R.R. Passenger Corp.*, 536 U.S. at 113 (explaining that "discriminatory acts are not actionable if time barred").

    2. *The ACRA*

To bring an ACRA claim against an employer, a plaintiff must file a charge of discrimination within 180 days of the alleged unlawful employment practice. Ariz. Rev. Stat. § 41-1481(A); *see also Terry v. United Parcel Serv. Inc.*, No. CV-17-04792-PHX-DJH, 2018 WL 8619996, at *2 (D. Ariz. Oct. 4, 2018) ("While the ACRA is modeled after and is generally identical to Title VII of the Civil Rights Act, the ACRA and Title VII do differ in certain respects. One such difference is that Title VII includes an extension of time to file a charge of discrimination to 300 days in deferral states, such as Arizona, while the ACRA does not contain a similar extension." (citation modified)). A "non-timely complaint" is fatal to a court's jurisdiction over an ACRA

---

[2] In Plaintiff's Response, Plaintiff argues that "equitable tolling should apply under the circumstances here" should the Court find Plaintiff's ADA claim time barred. (Doc. 30 at 6.) The Court disagrees. Equitable tolling applies "in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001) (citation modified). Plaintiff does not allege any facts suggesting Plaintiff was unaware of a discriminatory cause of action; thus, Plaintiff fails to convince the Court it should toll the 300-day deadline for four years (because the alleged violation occurred in 2019, Plaintiff needed to file a charge by 2020 but did not do so till 2024). Therefore, the Court rejects Plaintiff's equitable tolling argument.

claim. *Ornealas v. SCOA Indus., Inc.*, 587 P.2d 266, 267 (Ariz. Ct. App. 1978).

As noted, Plaintiff did not file a charge of discrimination until March 25, 2024. Therefore, Plaintiff is time-barred from asserting a claim under the ACRA for any discriminatory behavior occurring before September 27, 2023 (180 days prior to Plaintiff filing a charge of discrimination). Plaintiff's ACRA claim is time barred because it is based on Defendant's conduct in 2019. Accordingly, the Court dismisses with prejudice Plaintiff's ACRA claim because Plaintiff failed to timely exhaust Plaintiff's administrative remedies. *See Seredina v. W.L. Gore & Assocs. Inc.*, No. CV-24-08031-PCT-SMM, 2025 WL 2257538, at *7 (D. Ariz. Aug. 7, 2025) (dismissing a plaintiff's ACRA claims because she filed her charge with the EEOC 194 days after her termination).

**B. Failure to Promote and Pay Discrimination—Count Four**

Plaintiff alleges Defendant violated Title VII, the Equal Pay Act, and "Arizona Wage Statutes" by denying Plaintiff "promotions and fair compensation" despite Plaintiff's "exceptional performance." (Doc. 26 at 12.) The Court finds Plaintiff fails to state a claim under any of these statutes.

    1. *Title VII*

"Title VII makes it an unlawful employment practice for an employer to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Bond v. Wells Fargo Bank NA*, 782 F. Supp. 3d 743, 752 (D. Ariz. 2025) (citation modified) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986)). "Before a plaintiff may file a Title VII . . . suit in federal court, she must first file a charge with the EEOC," which must be filed within 180 days of the violation, or 300 days if first filed with a state or local agency. *Id.* at 752–53 & n.3 (quoting *Bond v. Wells Fargo Bank NA*, No. CV-21-00830-PHX-JJT, 2021 WL 5850877, at*3 (D. Ariz. Dec. 9, 2021)).

Unlawful employment practices include "numerous discrete acts," such as the failure or refusal to promote, and discrimination with respect to an individual's compensation. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 111, 114. A plaintiff may only

file a charge covering such discrete acts if they occurred "within the appropriate time period." *Id.* at 114. Thus, the plaintiff must identify when the specific unlawful behavior occurred because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

Here, Plaintiff states Defendant failed to promote Plaintiff in 2020 and 2022. (Doc. 26 at 3–4.) In 2020, Plaintiff claims Defendant forced a supervisor to rate Plaintiff's 2019 job performance as "Meets Expectations," though the supervisor apparently intended to rate Plaintiff as "Exceeds Expectations" and recommended Plaintiff for promotion. (*Id.*) In 2022, Plaintiff "received the Key Contributor Award," yet was not promoted. (*Id.* at 4.) Plaintiff also claims Plaintiff was not compensated accordingly after receiving the award. (*Id.*)

Similar to the ADA time period discussed above, Plaintiff is time barred from asserting a claim under Title VII for any discriminatory behavior occurring before May 30, 2023 (300 days prior to Plaintiff filing a charge with the EEOC). None of Plaintiff's allegations occurred within the appropriate time period. Plaintiff does not specifically identify any other date where Defendant either discretely failed to promote Plaintiff or discriminately paid Plaintiff. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 114 ("Discrete acts such as . . . failure to promote . . . are easy to identify."). Accordingly, the Court dismisses with prejudice Plaintiff's Title VII claims because Plaintiff failed to timely exhaust Plaintiff's administrative remedies. *See id.* at 114–115 (holding that all alleged Title VII violations occurring before the 300-day time period were "no longer actionable").

2. *The Equal Pay Act*

"Congress enacted the Equal Pay Act (EPA) to combat pay disparities caused by sex discrimination . . . ." *Rizo v. Yovino*, 950 F.3d 1217, 1219 (9th Cir. 2020). The EPA states:
> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

- 6 -

29 U.S.C. § 206(d)(1). To establish a prima facie case of wage discrimination, a plaintiff must show that "the employer pays different wages to employees of the opposite sex for substantially equal work." *Rizo*, 950 F.3d at 1222 (quoting *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986)).

Here, Plaintiff has not met this burden. Plaintiff contends Defendant discriminately underpaid Plaintiff compared to other employees. (Doc. 26 at 4–5.) In 2022, Plaintiff alleges Plaintiff was not compensated accordingly after receiving the Key Contributor Award. (*Id.* at 4.) To evidence this purported pay disparity, Plaintiff points to two comparators. First, Plaintiff states other "Director-level" employees were compensated from "$240,000 to $385,000," yet Plaintiff, who allegedly satisfied Defendant's criteria for these roles, was only paid $130,260. (*Id.*) Second, Plaintiff states other employees, performing comparable or lesser responsibilities, received higher annual salaries ranging from $140,000 to $187,200. (*Id.* at 4–5.) However, Plaintiff only points to an alleged pay discrimination between Plaintiff and other employees; Plaintiff does not claim the alleged discrepancy was based on sex. Therefore, the Court dismisses Plaintiff's EPA claim with leave to amend. *See Davis v. Gen. Atomics*, No. 8:23-cv-00132-WLH-ADS, 2025 WL 1127872, at *17 (C.D. Cal. Jan. 23, 2025) (holding plaintiff failed to state a claim under the EPA because he did not allege "that his pay was different based on his sex").

### 3. *Arizona Wage Statutes*

Plaintiff claims Defendant violated "Arizona Wage Statutes." (Doc. 26 at 12.) Yet, Plaintiff's SAC does not state which ones. It is only in Plaintiff's response to Defendant's Motion where Plaintiff identifies Arizona Revised Statute § 23-341—Arizona's Equal Pay Act—as the pertinent statute. The Court takes issue with this approach.

First, it is not the Court's responsibility to guess which Arizona wage statutes Plaintiff's SAC intended to invoke. *See Bencomo Enters. v. United Specialty Ins. Co.*, 345 F. Supp. 3d 1401, 1406 (S.D. Fla. 2018) (refusing to infer a plaintiff's intended cause of action, and thus dismissing the claim, because "the Court will not do Plaintiff's job for it"); *see also Aunhkhotep v. Thomas*, No. 4:24-cv-01551-HEA, 2025 WL 328057, at *1 (E.D.

Mo. Jan. 29, 2025) ("The Court will not supply additional facts or construct legal theories to support the plaintiff's claims."). Second, although Plaintiff identifies the statute in Plaintiff's responsive briefing, "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989). Third, even if the Court were to interpret Plaintiff's SAC as referencing § 23-341, Plaintiff still fails to allege any facts demonstrating a sex-based wage differential. *See Williams v. JCS Acquisition Inc.*, No. CV-24-00183-PHX-KML, 2025 WL 522513, at *3 (D. Ariz. Feb. 18, 2025) (dismissing a claim under Arizona's Equal Pay Act where plaintiff failed to allege whether other employee comparators "were of the opposite sex"). Accordingly, the Court dismisses with leave to amend Plaintiff's claim that Defendant violated Arizona wage statutes.

### C. Wrongful Termination—Count Five

Plaintiff alleges Defendant violated the Arizona Employment Protection Act (the "AEPA") because Defendant's reasons for laying Plaintiff off were allegedly pretextual and influenced instead by "discrimination and retaliation." (Doc. 26 at 12.) Plaintiff claims Plaintiff's "continuous and irreplaceable work on critical upgrades, suggests that the layoff was a pretext for discrimination and retaliation." (*Id.* at 8.)

Under the AEPA, an employee may bring a claim for wrongful termination for three reasons: (1) "the discharge was in violation of an employment contract"; (2) "the discharge violated a statute of this state"; or (3) "the discharge was in retaliation for the employee's assertion of certain rights protected by state law." *Cronin v. Sheldon*, 991 P.3d 231, 236 (Ariz. 1999); *see also* Ariz. Rev. Stat. § 23-1501(A)(3)(a)–(c). Here, Plaintiff's SAC implicates the second and third reasons—i.e., discharge in violation of a state statute and retaliatory discharge. The Court finds Plaintiff fails to state a claim under the AEPA for the former but not the latter.

#### 1. *Discharge In Violation of a State Statute*

The AEPA permits a plaintiff to bring a wrongful termination claim if the discharge violated a state statute. § 23-1501(A)(3)(b). However, if that state statute provides its own

1  remedies for a violation thereof, then the plaintiff is precluded from bringing an AEPA
2  claim for violation of that statute. *See* § 23-1501(B) ("If the statute provides a remedy to
3  an employee for a violation of the statute, the remedies provided to an employee for a
4  violation of the statute are the exclusive remedies for the violation of the statute or the
5  public policy prescribed in or arising out of the statute."); *Taylor v. Graham Cnty. Chamber*
6  *of Com.*, 33 P.3d 518, 522 (Ariz. Ct. App. 2001) (explaining that the § 23-1501(3)(b)
7  permits a plaintiff to claim wrongful termination in violation of a state statute "only if that
8  other statute 'does not provide a remedy to an employee for the violation of the [that]
9  statute'" (quoting § 23-1501(3)(b))); *Guernsey v. Elko Wire Rope Inc.*, No.
10 CV-21-00848-PHX-DJH, 2023 WL 5348567, at *3 (D. Ariz. Aug. 21, 2023) (holding that
11 "[t]he plain language of the [AEPA] shows that [plaintiff's] AEPA retaliation claim is
12 precluded because it is based on a violation of the Fair Wages Act, which contains its own
13 remedies for a violation thereof").

14       Here, Plaintiff alleges Defendant terminated Plaintiff for discriminatory purposes.
15 The statute underlying this allegation is the ACRA. *See Taylor*, 33 P.3d at 188 (noting that
16 "the only 'source' statute underlying" plaintiff's discriminatory termination claim was the
17 "ACRA"); Ariz. Rev. Stat. § 41-1463(B)(1) (ACRA: "It is an unlawful employment
18 practice for an employer . . . to discharge any individual or otherwise to discriminate
19 against any individual . . . because of the individual's race, color, religion, sex, age or
20 national origin or on the basis of disability."). Therefore, Plaintiff's AEPA claim is
21 precluded because "if an employer violates [the] ACRA, that statute provides a remedy to
22 an employee for the violation." *See Taylor*, 33 P.3d at 188. ("The [AEPA] does not provide
23 a back door method of suing [a defendant] in tort for wrongful termination in violation of
24 ACRA or its public policy."); *see also* Ariz. Rev. Stat. § 41-1481(G) (ACRA: permitting a
25 court to "enjoin the defendant from engaging in the unlawful employment practice,"
26 reinstate the employee "with or without backpay," and order "any other equitable relief as
27 the court deems appropriate"). Accordingly, the Court dismisses with prejudice Plaintiff's
28 claim for discriminatory termination under the AEPA because the ACRA provides a

remedy for such claims. *See Cronin*, 991 P.2d at 236 ("[S]ince ACRA provides its own remedy for wrongful termination, such remedy becomes the exclusive remedy for an ACRA violation.").

### 2. *Retaliatory Discharge*

"To establish a prima facie case of retaliation under the AEPA, an employee must show: (1) the employee engaged in a protected activity; (2) the employee was terminated; and (3) that there is a causal link between the protected activity and the termination." *Murar v. AutoNation Inc.*, No. CV-19-05793-PHX-MTL, 2021 WL 3912849, at *5 (D. Ariz. Sep. 1, 2021). The AEPA provides an exhaustive list of ten protected activities. *See* § 23-1501(A)(3)(c)(i)–(x). The second protected activity, as pertinent here, relates to an employee's disclosure of a potential violation of state law. § 23-1501(A)(3)(c)(ii). Specifically, this provision protects:

> The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, *or an employee of the employer*, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state.

*Id.* (emphasis added). Therefore, under the AEPA, an employee can bring a retaliatory termination claim if they believe they were terminated for disclosing, for example, an employee's potential violation of state law. Plaintiff plausibly pleads such a claim.

Here, the SAC states that Plaintiff, in early 2023, filed a formal complaint with Defendant's human resources office "regarding the discriminatory treatment and hostile environment fostered by Mitch Mitchell." (Doc. 26 at 7.) Mitch Mitchell, according to Plaintiff, was one of Defendant's upper management personnel who forced Plaintiff's supervisor to give Plaintiff a lower performance rating. (*Id.* at 3.) Additionally, Plaintiff alleges Mitchell "excluded Plaintiff from workplace activities such as birthday and work anniversary announcements," "regularly berated Plaintiff" for issues beyond Plaintiff's control. (*Id.* at 6.) After filing the HR complaint, Plaintiff alleges Mitchell's "hostile

- 10 -

1 behavior escalated, clearly in retaliation for the complaint." (*Id.* at 7.) This included
2 bypassing Plaintiff outside of the normal chain of communication "when [Mitchell] would
3 typically have consulted Plaintiff," and "the reassignment of Plaintiff's responsibilities to
4 less qualified individuals." (*Id.* at 7–8.) Defendant then laid off Plaintiff "as part of a
5 'streamlining effort.'" (*Id.* at 8.)

Given the foregoing facts, the Court finds Plaintiff plausibly states a claim for retaliatory termination under the AEPA. Accordingly, the Court denies Defendant's Motion as to this claim.

### D. Breach of Good Faith and Fair Dealing—Count Six

Plaintiff alleges Defendant "acted in bad faith by undermining Plaintiff's performance and obstructing career advancement." (*Id.*) Specifically, Plaintiff states Defendant: (1) used "false claims of poor performance during internal discussions and settlement negotiations"; (2) blocked "Plaintiff's promotion to Product Manager" despite recommendations from Plaintiff's supervisor; and (3) "[s]ystematically undervalue[ed] Plaintiff's contributions while reassigning duties to less qualified individuals." (*Id.* at 8–9.) Defendant responds that Arizona does not recognize an action for breach of the implied covenant of good faith and fair dealing in the employment contract context. (Doc. 28 at 7.) This is only partially true. Arizona courts *do not* recognize an action in *tort* for such violations, but they *do* recognize an action based on the employment *contract*.

In Arizona, "[t]he employment relationship is contractual in nature." § 23-1501(A)(1). There is an implied covenant of good faith and fair dealing in employment contracts that requires "neither party do anything that will injure the right of the other to receive the benefits of their agreement." *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1038, 1040 (Ariz. 1985). Therefore, "the remedy for a breach of the covenant of good faith 'generally is on the contract itself.'" *Nelson v. Phx. Resort Corp.*, 888 P.2d 1375, 1384 (Ariz. Ct. App. 1994) (quoting *Wagenseller*, 710 P.2d at 1038). In other words, an employee generally must point to a violation of their employment contract when alleging a breach of the covenant of good faith in employment actions. *See*

*White v. AKDHC, LLC*, 664 F. Supp. 2d 1054, 1065 (D. Ariz. 2009) (citing *Wagenseller*, 710 P.2d at 1040) (explaining that the covenant of good faith "protects an employee only to the extent that the employer denied the terminated employee benefits agreed to in the employment contract").

On the other hand, "Arizona has consistently refused to recognize a tort action for breach of the implied covenant of good faith and fair dealing in the employment contract context." *Smith v. Am. Express Travel Related Servs. Co.*, 876 P.2d 1166, 1175 (Ariz. Ct. App. 1994); *see also Nelson*, 888 P.2d at 1385 ("Every court that has considered *Wagenseller* has construed its holding to prohibit a tortious 'bad faith' cause of action from arising out of breach of an employment agreement . . . .").

Here, Plaintiff's claim is vague. To the extent Plaintiff is asserting a claim in tort, it is dismissed with prejudice. To the extent Plaintiff is asserting a claim based on Plaintiff's employment contract, Plaintiff's claim is insufficient. Plaintiff does not allege that Defendant interfered in Plaintiff's right to receive a contractual benefit.[3] *But see Wagenseller*, 710 P.2d at 385 (recognizing a violation of the covenant of good faith where an employer discharges an employee to avoid paying benefits already earned such as sales commissions). Accordingly, the Court dismisses Plaintiff's claim with leave to amend.

### E. Fraudulent Misrepresentation—Count Seven

Under Arizona law, a claim for fraudulent misrepresentation requires: (1) "a false material representation"; (2) "made with the speaker's knowledge of its falsity or ignorance of its truth and with the intent that it be acted upon by the listener"; (3) "the listener's ignorance of its falsity, reliance on its truth, and right to rely on its truth"; and (4) "consequent and proximate injury." *Dillon v. Zeneca Corp.*, 42 P.3d 598, 603 (Ariz. Ct. App. 2002). Further, Plaintiff must plead this cause of action with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). In other words, Plaintiff must specifically state "'the who, what, when, where, and how' of the misconduct charged." *Vess v.*

---

[3] Again, Plaintiff improperly asserts new facts in the responsive briefing. (Doc. 30 at 10–12.) The Court will not consider these facts here. *See O'Brien*, 719 F. Supp. at 229.

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Coopper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Plaintiff fails to satisfy the first prong.

Plaintiff alleges "Defendant knowingly made false statements about Plaintiff's performance and qualifications" to justify not promoting and terminating Plaintiff. (Doc. 26 at 9.) Plaintiff fails to identify any false representation from Defendant. Rather, Plaintiff's SAC asserts a conclusory statement that Defendant "misrepresented Plaintiff's performance" without alleging what was said. (*Id.* at 12.) A plaintiff cannot maintain a claim for fraudulent misrepresentation without explaining the alleged misrepresentation. *See Smith v. Don Sanderson Ford, Inc.*, 439 P.2d 837, 840 (Ariz. 1968) ("A failure to prove any one of these . . . elements would be fatal to any case sounding in fraud."). Accordingly, the Court dismisses with leave to amend Plaintiff's fraudulent misrepresentation cause of action because Plaintiff fails to plead this claim with particularity.[4]

### F. Defamation—Count Eight

"To establish defamation under Arizona common law, 'a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation.'" *Rogers v. Mroz*, 502 P.3d 986, 987 (Ariz. 2022) (quoting *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989)). "Publication for defamation purposes is communication to a third party." *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. Ct. App. 2007). Finally, "[s]ubstantial truth of an allegedly defamatory statement may provide an absolute defense to an action for defamation." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 449 (Ariz. Ct. App. 2015).

Plaintiff alleges Defendant "defamed Plaintiff" by (1) "[m]aking false and malicious statements about Plaintiff's performance during settlement discussions"; (2) "[d]isclosing Plaintiff's deadname[5] to third-party contractors, exacerbating emotional distress and reputational harm"; and (3) "[f]alsely attributing Plaintiff's layoff to

---

[4] Although Plaintiff identifies allegedly false representations in Plaintiff's Response to Defendant's Motion, as noted, such briefing cannot be used to amend Plaintiff's SAC. *See O'Brien*, 719 F. Supp. at 229; *see also Strotek Corp. v. Air Transp. Ass'n of Am.*, 45 Fed. App'x 663, 664 (9th Cir. 2002) (holding "the district court did not err in limiting its analysis to the statements pled in [the plaintiff's] complaint").

[5] Plaintiff uses "deadname" in reference to Plaintiff's previous legal name.

performance issues rather than discrimination and retaliation." (Doc. 26 at 9.) The Court finds that Plaintiff fails to state a claim for defamation for all three allegations.

1. *Statements During Settlement Discussions*

Here, Plaintiff's first allegation fails to state a claim for defamation for multiple reasons. First, it does not identify any specific statement from Defendant. Plaintiff only alleges "false and malicious statements" were made during "settlement discussions." (*Id.*) A claim for defamation requires identifying a specific defaming statement. *See Celli v. Shoell*, 995 F. Supp. 1337, 1346 (D. Utah 1998) (dismissing defamation cause of action for failure to state a claim because "the complaint fails to identify any specific defamatory statements made by the defendants or when, where, or to whom any defamatory statements were made").

Second, comments made to plaintiff during settlement negotiations are not publications to a third party. *See Washington v. Cal. City Corr. Ctr.*, No. 1:10-cv-02031 OWW JLT, 2011 WL 1566742, at *6 (E.D. Cal. Apr. 25, 2011) (noting that it was unclear whether the alleged statements were made "solely to Plaintiff (which is not publication) or to another person (which is publication)"). In Plaintiff's response, Plaintiff explains that allegedly false statements were made in a "response to Plaintiff's pre-litigation demand letter." (Doc. 30 at 16.) Such communications are not defamatory because they are not publications to third parties. *See Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 489 (6th Cir. 1995) ("[I]f the language complained of was uttered only to the complaining party or to his agent representing him in the matter discussed in the communication, it is not such a publication as will support an action for slander. Particularly is this true where the communication was solicited by the plaintiff or his agent." (alteration in original) (quoting *Mims v. Metro. Life Ins. Co.*, 200 F.2d 800, 802 (5th Cir. 1952)).

Third, parties to litigation have an "absolute privilege to defame" when making comments "in connection with judicial proceedings." *See Green Acres Tr. v. London*, 688 P.2d 617, 621 (Ariz. 1984). "Arizona's litigation privilege protects the speech of 'judges, parties, lawyers, witnesses and jurors.'" *Huffman v. JP Morgan Chase Bank, NA*, No.

1  CV-22-00903-PHX-JJT, 2023 WL 2691455, at *3 (D. Ariz. Mar. 29, 2023) (quoting *Green Acres Tr.*, 688 P.2d at 621). The absolute privilege to defame is "based upon the recognition that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interest." *Green Acres Tr.*, 688 P.2d at 620. "In order to fall within the privilege, the defamatory publication must relate to, bear on or be connected with the proceeding." *Id.* at 621. This includes communications made in reference to "pending litigation." *Id.* (quoting Restatement (Second) of Torts § 586 cmt. c (A.L.I. 1977)). Therefore, even if Defendant's response to Plaintiff's pre-litigation demand letter was a defamatory publication, Defendant is protected from liability. *See id.* at 620 (describing Arizona's litigation privilege as a "protection from liability"); *see also McKenna v. Crawford*, No. 3:17-cv-455-SI, 2018 WL 3715714, at *6 (D. Or. Aug. 3, 2018) (holding that "the demand letter on which Defendants appear to rely is absolutely privileged because it closely, directly relates to this litigation"). Accordingly, the Court dismisses Plaintiff's defamation claim for this allegation.

2.  *Use of Plaintiff's Deadname*

Plaintiff's second allegation also fails to state a claim for defamation. On August 9, 2023, Plaintiff legally changed Plaintiff's name. (Doc. 26 at 5.) Plaintiff states Defendant, after laying off Plaintiff, disclosed "Plaintiff's deadname to third-party contractors, exacerbating emotional distress and reputational harm." (*Id.* at 9.) The Court finds Plaintiff fails to state a claim for defamation for two reasons.

First, Plaintiff's SAC does not allege that the use of Plaintiff's previous legal name is a false statement. On that ground alone, the Court dismisses the count for failure to state a claim. *See Best v. Mosely*, No. 1 CA-CV 10-0700, 2011 WL 4857770, at *4 (Ariz. Ct. App. Oct. 13, 2011) (dismissing claim for defamation because the plaintiff "failed to allege that [the defendant's] statements were false").

Second, even if Plaintiff did allege that Defendant's use of Plaintiff's prior name constituted a false statement, such statement would not amount to defamation. In Arizona,

hyperbolic rhetoric or epithets (i.e., name-calling) are not defamatory "as a matter of law." *See Dube v. Likins*, 167 P.3d 93, 107 & n.5 (Ariz. Ct. App. 2007) (citing Restatement (Second) of Torts § 566 (A.L.I. 1977)); *see also Turner v. Devlin*, 848 P.2d 286, 293–94 (Ariz. Ct. App. 1993) (holding that rhetorical hyperbole or vigorous epithets were non-actionable). That is because such language does not imply an "assertion of provable fact" susceptible to proof of truth or falsity. *Turner*, 848 P.2d at 294; *see also Yetman v. English*, 811 P.2d 323, 331 (Ariz. 1991) (explaining that "assertions [that] employ 'loose, figurative or hyperbolic language' . . . cannot reasonably be interpreted as stating or implying actual facts" (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)). Therefore, generally, "obscenities, vulgarities, insults, epithets, name-calling, and other forms of verbal abuse are insufficient to raise a claim for defamation." *Foroughi v. Wal-Mart Stores, Inc.*, No. CV–10–506–PHX–GMS, 2010 WL 2231931, at *2 (D. Ariz. June 2, 2010); *see also* Rodney A. Smolla, *Law of Defamation* §§ 4.7, 4.8 (2d Ed. 2025) ("No matter how obnoxious, insulting, or tasteless such name-calling, it is regarded as a part of life for which the law of defamation affords no remedy."). The Restatement (Second) of Torts, cited with approval by Arizona courts, summarizes the foregoing concept succinctly:

> There are some statements that are in form statements of opinion, or even of fact, which cannot reasonably be understood to be meant literally and seriously and are obviously mere vituperation and abuse. A certain amount of vulgar name-calling is frequently resorted to by angry people without any real intent to make a defamatory assertion, and it is properly understood by reasonable listeners to amount to nothing more. This is true particularly when it is obvious that the speaker has lost his temper and is merely giving vent to insult. Thus when, in the course of an altercation, the defendant loudly and angrily calls the plaintiff a bastard in the presence of others, he is ordinarily not reasonably to be understood as asserting the fact that the plaintiff is of illegitimate birth but only to be abusing him to his face. No action for defamation will lie in this case.

*Id.* § 566 cmt. e (A.L.I. 1977).

Here, Plaintiff claims Defendant "fail[ed] to respect Plaintiff's gender identity" by using Plaintiff's prior legal name. (Doc. 26 at 8.) At most, Plaintiff seems to contend

Defendant insulted Plaintiff by using this name. But insults are not defamatory. *See Foroughi*, 2010 WL 2231931, at *2 (holding that insults such as "'b***h,' 'idiot,' and 'slacker'" did not "give rise to a case of action for defamation under Arizona law"); *Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002) (holding that "harsh name-calling" such as "'trash,' 'crap' and 'garbage'" was not defamatory). Thus, at its worst construction, Defendant's use of Plaintiff's prior legal name is not defamatory. Therefore, Plaintiff fails to state a claim for defamation for this allegation.

### 3. *Defendant's Reasons for Laying Plaintiff Off*

Plaintiff's third allegation fails for similar reasons as to the first allegation. Plaintiff states Defendant falsely attributed "Plaintiff's layoff to performance issues rather than discrimination and retaliation." (Doc. 26 at 9.) However, these allegedly false statements also originate from Defendant's response to Plaintiff's demand letter. (Doc. 30 at 16–17.) Therefore, these statements are privileged. *See Green Acres Tr.*, 688 P.2d at 621. The remaining statement from Defendant states Plaintiff was laid off "as part of a 'streamlining effort.'" (Doc. 26 at 8.) Put aside the fact that this statement is not a publication because it was made to Plaintiff, it is also does not "impeach plaintiff's honesty, integrity, virtue, or reputation." *Rogers*, 502 P.3d at 987. Accordingly, this allegation fails to state a claim for defamation.

In sum, the Court dismisses with prejudice Plaintiff's defamation claim against Defendant because Plaintiff cannot cure the above deficiencies by alleging new facts.

## IV. LEAVE TO AMEND

"A district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation modified). The Court only grants Plaintiff leave to amend the following claims: pay discrimination under the EPA and Arizona wage statutes (count four); breach of good faith and fair dealing (count six); and fraudulent misrepresentation (count seven). The Court *does not* grant Plaintiff leave to amend the following claims: failure to accommodate

disability under the ADA and ACRA (count two); failure to promote under Title VII (count four); wrongful termination in violation of the ACRA (count five); and defamation (count eight). These claims are dismissed with prejudice as discussed above.

Plaintiff's amended complaint must follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. Within thirty (30) days from the date of entry of this Order, Plaintiff may submit a third amended complaint. Plaintiff must clearly designate on the face of the document that it is the "Third Amended Complaint." The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

The Court draws attention to the District of Arizona's Federal Court Advice Only Clinic, Federal Court Advice Only Clinic - Phoenix | District of Arizona | United States District Court (uscourts.gov). The Court also notes the E-Pro Se program which assists litigants with creating a complaint form, Welcome - eProSe (uscourts.gov). Lastly, the Court advises Plaintiff that certain resources for self-represented parties, including a handbook and the Local Rules, are available on the Court's website, www.azd.uscourts.gov, by following the link "Self-Represented Litigants."

V.  **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED granting in part and denying in part** Defendant's Partial Motion to Dismiss (Doc. 28).

Dated this 6th day of October, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge