**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dominik Stone, | No. CV-24-03047-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Charles Schwab & Company Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Charles Schwab & Co., Inc.'s Second Partial Motion to Dismiss, (Doc. 36), and Plaintiff Dominik Stone's, who is proceeding pro se, Third Amended Complaint ("TAC") (Doc. 35).  Having reviewed the briefing and the relevant case law, the Court **grants** Defendant's Motion.

## I.   BACKGROUND

Plaintiff previously filed a SAC asserting ten claims against Defendant.  (Doc. 26.) Defendant moved to partially dismiss those claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Doc. 28.)  The Court granted Defendant's Motion as to all counts except for Plaintiff's claim for retaliatory discharge.  (Doc. 33.)  The remaining counts failed to state a claim for relief.  (*Id.*)  The Court dismissed the following claims with prejudice: failure to accommodate disability under the ADA and ACRA; failure to promote under Title VII; wrongful termination in violation of the ACRA; and defamation. (*Id.* at 17–18.)  The Court granted Plaintiff leave to amend the following claims: pay discrimination under the EPA and Arizona wage statutes; breach of good faith and fair dealing; and fraudulent misrepresentation.  (*Id.* at 17.)

Plaintiff has since amended these claims, (Doc. 35), and Defendant now moves to dismiss.  (Doc. 36.)

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto*

*v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.   DISCUSSION

Plaintiff's TAC asserts the following counts against Defendant: (1) sex discrimination and retaliation under Title VII;[1] (2) retaliatory discharge; (3) violation of the federal Equal Pay Act, 29 U.S.C. § 206(d), (4) violation of the Arizona Equal Pay Act, A.R.S. § 23-341 *et seq*; (5) breach of the implied covenant of good faith and fair dealing; (6) fraud and misrepresentation; and (7) intentional infliction of emotional distress. (Doc. 35 at 10–16). Defendant moves to dismiss claims two through seven pursuant to Rule 12(b)(6). (Doc. 36). The Court grants Defendant's motion as to all counts but grants Plaintiff leave to amend the retaliation claim.

### A.   Retaliatory Discharge—Count Two

The Court previously denied Defendant's motion to dismiss Plaintiff's retaliatory discharge claim under the Arizona Employment Protection Act ("AEPA"). (Doc. 33 at 10–11). The Court found that Plaintiff plausibly alleged that Defendant wrongfully terminated Plaintiff in retaliation for reporting Defendant's allegedly discriminatory conduct to Human Resources. (*Id.*) Defendant now argues that the Court should dismiss this claim because Plaintiff must bring it under the Arizona Civil Rights Act ("ACRA"). (Doc. 36 at 4.) The Court agrees.[2] Accordingly, the Court dismisses Plaintiff's retaliation

---

[1] Because the Court previously dismissed Defendant's Title VII claims with prejudice, the Court will not entertain them again.

[2] The Court's previous Order should have recognized that the ACRA is also the exclusive remedy for claims of retaliation with respect to an employee reporting allegedly discriminatory conduct. *See Chen v. Cozzoli LLC*, No. CV-21-01025-PHX-DWL, 2022 WL 845190, at *4 (D. Ariz. Mar. 22, 2022) (finding that retaliation in response to reports of discriminatory "violations cannot give rise to an AEPA claim because they are separately actionable under ACRA"); A.R.S. § 23-1501(B) (AEPA) ("If the statute

- 3 -

claim without prejudice and grants Plaintiff leave to amend and assert the claim under the ACRA.

### B.      Pay Discrimination—Counts Three and Four

Plaintiff alleges Defendant, between December 2018 to March 2021, disproportionately paid male employees more than Plaintiff in violation of the federal Equal Pay Act ("EPA") and Arizona Equal Pay Act ("Arizona EPA"). (Doc. 35 at 12–14.) Plaintiff alleges that "[t]he differential was not based on seniority, merit, production, or any other statutory defense" but instead "was because of sex, including discrimination based on Plaintiff's transgender status." (Doc. 35 at 13.) Defendant argues that both claims are time-barred under their respective statutes of limitations. (Doc. 36 at 5.) The Court agrees.

### 1.      *The Equal Pay Act*

"Congress enacted the Equal Pay Act (EPA) to combat pay disparities caused by sex discrimination . . . ." *Rizo v. Yovino*, 950 F.3d 1217, 1219 (9th Cir. 2020). The EPA states:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1). A plaintiff must bring an EPA action "within two years after the cause of action accrued," or within three years if the "cause of action aris[es] out of a willful violation." 29 U.S.C. § 255(a). Otherwise, the action is time-barred.

Plaintiff claims the alleged EPA violations occurred between December 2018 and March 8, 2021.[3] (Doc. 35 at 12–13.) Plaintiff filed Plaintiff's initial Complaint on

provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy prescribed in or arising out of the statute.").

[3] Plaintiff improperly asserts new facts in Plaintiff's responsive pleading. (Doc. 38 at 8.) The Court will not consider these allegations. *See Cole v. Amazon.com Servs. LLC*, 765 F. Supp. 3d 1154, 1160 (W.D. Wash. 2025) ("It is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion to dismiss." (citation modified)); *see also Strotek Corp. v. Air Transp. Ass'n of Am.*, 45 F. App'x 663, 664 (9th Cir. 2002) (holding

September 13, 2024, more than three years after March 9, 2021. (Doc. 1-2 at 2.) Therefore, even under the EPA's longer statute of limitations, Plaintiff's EPA action is time-barred. Accordingly, the Court dismisses Plaintiff's EPA claim with prejudice.

### 2. *Arizona Equal Pay Act*

Arizona's EPA timeline is even more stringent. An action arising under the Arizona EPA must be brought "within six months after the date of the alleged violation." § 23-341(F); *Shaw v. SynCardia Sys., Inc.*, No. CV 07-502 TUC JMR, 2008 WL 11446782, at *4 (D. Ariz. Apr. 21, 2008) (denying as untimely an Arizona EPA claim filed eleven months after the alleged violation). Plaintiff's Arizona EPA claim parallels Plaintiff's federal EPA claim timeline. (Doc. 35 at 14–15.) Therefore, Plaintiff's Arizona EPA claim is time-barred because Plaintiff's Complaint was filed well after the six-month statute of limitations.[4] (Doc. 1-2 at 2.) Accordingly, the Court dismisses Plaintiff's Arizona EPA claim with prejudice.

### C. Breach of Good Faith and Fair Dealing—Count Five

Plaintiff alleges that Defendant, as an employer, provided the following "bargained-for benefits": "ratings, annual increases, bonus and [restricted stock units] eligibility, and promotion consideration" as well as "participation in Schwab's education-reimbursement program with Colorado Technical University that supported Plaintiff's B.S. in Computer Science coursework." (Doc. 35 at 14–15.) Plaintiff states that Defendant deprived Plaintiff of these benefits by: downgrading Plaintiff's performance review from exceeds expectations to meets expectations, "imposing a Meet-only ceiling, misclassifying Plaintiff's role and pay band, and preselecting a less-qualified cisgender employee for Senior Team Manager of Load Balancing (L59) without posting." (*Id.* at 15.) Defendant responds that Plaintiff's claim is time-barred. (Doc. 36 at 6.) The Court agrees in part.

Generally, a claim for breach of the implied covenant of good faith and fair dealing

---

that "the district court did not err in limiting its analysis to the statements pled in [the plaintiff's] complaint").

[4] Again, Plaintiff improperly asserts new facts in the responsive briefing. (Doc. 38 at 8.) The Court will not consider these facts here. *See Cole*, 765 F. Supp. 3d at 1160.

is subject to a two-year statute of limitations. *See Ryley v. Sparks L. Firm, P.C.*, No. 1 CA-CV 12-0178, 2013 WL 2389823, at *4 (Ariz. Ct. App. May 28, 2013). However, where the "claim is based on a contract theory, a one year statute of limitations applies." *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1156 (D. Ariz. 2016), *aff'd*, 705 F. App'x 539 (9th Cir. 2017). Here, Plaintiff's claim sounds in contract. Plaintiff states that the cited benefits were "governed by Schwab's annual merit-increase policies, bonus plan documents, and RSU award terms." (Doc. 35 at 15.) Therefore, the one-year statute of limitation applies. *See* A.R.S. § 12-541(3) (directing a one-year statute of limitations for "contract actions based on employee handbooks or policy manuals"); *see also Day*, 174 F. Supp. 3d at 1156 (holding that plaintiff's breach of the implied covenant of good faith and fair dealing claim was based in contract theory, and thus subject to the one-year statute of limitation, because plaintiff alleged "losses in earnings, stock grants, stock options, restricted stock units, retirement benefits, and other employee benefits that he would have received" from defendant).

Plaintiff's claim is untimely in part. Plaintiff's TAC states that the downgrading of Plaintiff's performance reviews, the "Meets-only ceiling," and the misclassifying of Plaintiff's role occurred in 2021 and 2022. (Doc. 35 at 4.) However, Plaintiff's Complaint was not filed till September 2024. Therefore, these claims are time-barred. The remaining conduct—promoting another employee without posting—allegedly occurred in October 2023 and is not time-barred. Nonetheless, this conduct fails to support a plausible claim for breach of the implied covenant of good faith and fair dealing. "The covenant requires that neither party do anything that will injure the right of the other to receive the benefits of their agreement." *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1038 (Ariz. 1985). Plaintiff fails to allege any facts demonstrating that Defendant promoting another employee breached an employment agreement between Defendant and Plaintiff. *See White v. AKDHC, LLC*, 664 F. Supp. 2d 1054, 1065 (D. Ariz. 2009) (explaining that the covenant "protects an employee only to the extent that the employer denied the terminated employee

- 6 -

benefits agreed to in the employment contract").

Finally, Plaintiff appears to allege that Plaintiff's termination itself deprived Plaintiff of the RSUs and education-reimbursement program.  (Doc. 35 at 9.)  However, "[a] claim for breach of the implied covenant may be viable if a plaintiff is alleging that conduct other than the termination itself breached the covenant."  *Day*, 174 F. Supp. 3d at 1156.  Accordingly, the Court finds that Plaintiff fails to plausibly allege a timely claim for breach of the implied covenant of good faith and fair dealing.  The Court dismisses this claim with prejudice.

### D.    Fraud—Count Six

Plaintiff's TAC alleges Defendant fraudulently represented that "Plaintiff's position was being eliminated or streamlined and would not be backfilled."  (Doc. 35 at 15.)  To plausibly state a claim for fraud, Plaintiff must allege facts showing this statement to be false.  *See Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978).  Plaintiff fails to do so.

Plaintiff claims that Defendant's statement was false because Defendant placed a different employee into "the Senior Team Manager of Load Balancing (L59) role in the same functional area" after laying off Plaintiff.  (Doc. 35 at 15.)  However, Plaintiff did not hold this title.  Plaintiff "held the title Senior Network Engineer (L58)," which "was retitled to Senior Product Owner (L58)."  (Doc. 35 at 4.)  Moreover, Plaintiff admits that the Senior Team Manager of Load Balancing (L59) position was vacant before Defendant later filled this position, and it was a role Plaintiff was interested in.  (*Id.* at 6.)  Therefore, Defendant did not backfill Plaintiff's position by promoting a different employee to the Senior Team Manager role; it filled a position that was apart from Plaintiff's role and previously vacant.  Accordingly, the Court dismisses this claim with prejudice because Plaintiff fails to allege facts showing Defendant's statement to be false.

### E.    Intentional Infliction of Emotional Distress—Count Seven

Plaintiff alleges Defendant caused Plaintiff severe emotional distress due to a

number of Defendant's alleged acts, including: (a) unauthorized forwarding of Plaintiff's "coming-out email" beyond the intended recipients; (b) excluding Plaintiff from advancement and recognition, (c) changing his performance review ratings, (d) allowing a vendor to "deadname" Plaintiff ("which HR later acknowledged and apologized for after Plaintiff complained"), (e) denying a salary increase after Plaintiff "nearly died from complications from a medically necessary hysterectomy," (f) "failing to address sexual harassment despite Plaintiff's reports," and (g) "conducting a cursory HR investigation that failed to prevent further retaliation and escalation of harm." (Doc. 35 at 16.) Defendant argues that Plaintiff fails to allege conduct that would support an intentional infliction of emotional distress ("IIED") claim. (Doc. 36 at 7–9.) The Court agrees.

To sustain an action for IIED, "a plaintiff must allege: (1) the defendant caused severe emotional distress; (2) by extreme and outrageous conduct; (3) with intent to cause emotional distress or with reckless disregard that such distress would result." *Fraser v. State*, No. 2 CA-CV 2025-0116, 2025 WL 3248333, at *7 (Ariz. Ct. App. 2025). "Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Christakis v. Deitsch*, 478 P.3d 241, 245 (Ariz. Ct. App. 2020) (citation modified). "In the employment context, it is extremely rare to find conduct sufficient to meet this standard." *Fraser*, 2025 WL 3248333, at *7 (citation modified).

Here, Plaintiff's IIED allegations ring of typical workforce complaints. It is not beyond all possible bounds of decency for an employer to refuse to promote an employee, refuse a salary increase, alter performance ratings, or perform an unsatisfactory HR investigation. *See Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) ("We readily agree with the trial court that [defendant's] failure to promote [plaintiff] does not 'go beyond all possible bounds of decency,' even if it was motivated by sex discrimination or retaliation."). Additionally, although forwarding Plaintiff's

coming-out email to other coworkers might lack "empathy and finesse," such action is not utterly intolerable. *See id.* at 564 (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 396 (3d Cir. 1988) (finding that defendant delivering a job reassignment letter to plaintiff while she was in the hospital for severe emotional and psychological problems was not sufficient for an IIED claim). This is particularly true in light of Plaintiff wanting everyone, even third-party vendors, to respect Plaintiff's new name, which would necessitate broad transparency. (Doc. 35 at 7.) To that point, assuming Defendant could be responsible for the speech of a third-party vendor, that vendor's use of Plaintiff's "deadname" does not amount to extreme and outrageous conduct. IIED "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" because "[t]here is no occasion for the law to intervene in every case where some one's feelings are hurt." *See Shepherd v. Costco Wholesale Corp.*, 441 P.3d 989, 994–995 (Ariz. Ct. App. 2019), *reversed in part on other grounds by*, 482 P.3d 390 (Ariz. 2021) (quoting Restatement (Second) of Torts § 46 (A.L.I. 1965)). Finally, while Plaintiff does allege that Plaintiff suffered sexual harassment in the workplace, Plaintiff fails to provide any detail to support that allegation and assist the Court in determining whether the conduct was "extreme and outrageous."[5]

In sum, "the challenged conduct does not qualify as the sort of extremely rare, atrocious and utterly intolerable conduct that completely violates human dignity and strikes to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Lindvall v. L. Office of Daniel Hutto PLLC*, No. CV-24-00768-PHX-DWL, 2024 WL 4634082, at *5 (D. Ariz. 2024) (citation modified). Accordingly, the Court dismisses Plaintiff's IIED claim with prejudice.

## IV.   LEAVE TO AMEND

The Court only grants Plaintiff leave to amend Plaintiff's retaliatory discharge claim. The Court dismisses with prejudice Plaintiff's claims for violation of the federal

---

[5] Plaintiff once again improperly asserts new facts in the responsive briefing. (Doc. 38 at 8.) The Court will not consider these facts here. *See Cole*, 765 F. Supp. 3d at 1160.

EPA and Arizona's EPA, breach of the implied covenant of good faith and fair dealing, fraud and misrepresentation, and IIED. Plaintiff may not amend these claims. *See Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint.").

Plaintiff's amended complaint must follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. Within thirty (30) days from the date of entry of this Order, Plaintiff may submit a fourth amended complaint. Plaintiff must clearly designate on the face of the document that it is the "Fourth Amended Complaint." The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

## V.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Partial Motion to Dismiss is **granted** (Doc. 36).

**IT IS FURTHER ORDERED** that if Plaintiff does not file a Fourth Amended Complaint within thirty (30) days of the date of this Order, the Clerk of Court shall dismiss this action without further order from the Court.

Dated this 5th day of March, 2026.

Honorable Susan M. Brnovich
United States District Judge